RECEIVED
CLERK OF DISTRICT COURT
H. SHEMWELL, CLERK
DATE 1/19/99
Sandra

PAM A. VERON

VERSUS

GATE PHARMACEUTICALS, a Division of Teva Pharmaceuticals, USA, Inc.; SMITHKLINE BEECHAM CORPORATION; ZENITH GOLDLINE PHARMACEUTICALS, INC.; ABANA PHARMACEUTICALS, INC.; RICHWOOD PHARMACEUTICALS COMPANY, INC.; ION LABORATORIES, INC.; MEDEVA PHARMACEUTICALS, INC.; A.H. ROBINS COMPANY, INC.; WYETH-AYERST LABORATORIES COMPANY; AMERICAN HOME PRODUCTS CORP.; INTERNEURON PHARMACEUTICALS, INC.; and CAMALL COMPANY

FILED: 11-16-98

NUMBER: 98-6145   DIV: "

14TH JUDICIAL DISTRICT COURT

CV99-0081 LC

PARISH OF CALCASIEU

JUDGE TRIMBLE
MAGISTRATE JUDGE WILSON

STATE OF LOUISIANA

DEPUTY CLERK: _____

**PETITION FOR DAMAGES**

NOW INTO COURT, through undersigned counsel, comes PAM VERON who, at all times pertinent to this lawsuit, has lived in the Parish of Calcasieu, State of Louisiana, and who respectfully represents as follows:

1.

Defendant, Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., is a Delaware corporation whose principal place of business is 650 Cathill Road, Sellersville, Pennsylvania 18960. At all times relevant hereto, Gate Pharmaceuticals has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

2.

Defendant, Smithkline Beecham Corporation, is a Pennsylvania corporation whose principal place of business is One Franklin Plaza, Philadelphia, Pennsylvania 19101. At all times relevant hereto, Smithkline Beecham Corporation has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

EXHIBIT
A
PROCESSED
DATE 11-18-__

3.

Defendant, Zenith Goldline Pharmaceuticals, Inc., is a Florida corporation whose principal place of business is 1900 West Commercial Boulevard, Fort Lauderdale, Florida 33309. At all times relevant hereto, Zenith Goldline has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

4.

Defendant, Abana Pharmaceuticals, Inc., is a Delaware corporation whose principal place of business is 1 Chase Corporate Drive, Suite 260, Birmingham, Alabama 35244. At all times relevant hereto, Abana Pharmaceuticals has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

5.

Defendant, Richwood Pharmaceutical Company, Inc., is a Kentucky corporation whose principal place of business is 7900 Tanners Gate Drive, Suite 200, Florence, Kentucky, 41042. At all times relevant hereto, Richwood Pharmaceutical Company has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

6.

Defendant, Ion Laboratories, Inc., is a Texas corporation whose principal place of business is 7431 Pebble Drive, Fort Worth, Texas, 76118. At all times relevant hereto, Ion Laboratories has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

7.

Defendant, Medeva Pharmaceuticals, Inc., is a Texas corporation whose principal place of business is 14801 Sovereign Road, Fort Worth, Texas 76155-2645. At all times relevant hereto, Medeva Pharmaceuticals has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

8.

Defendant, A.H. Robins Company, Incorporated, is a Delaware corporation whose principal place of business is 1407 Cummings Drive, Richmond, Virginia. At all times relevant hereto, A.H.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

Robins Company, Incorporated has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical fenfluramine.

9.

Defendant, Wyeth-Ayerst Laboratories Company, is a New York corporation which has its principal place of business at 170-1 Radnor-Chester Road, St. Davids, Pennsylvania 19807. At all times relevant hereto, Wyeth-Ayerst has been involved in the promotion, marketing, manufacture and distribution of the pharmaceuticals dexfenfluramine and fenfluramine.

10.

Defendant, American Home Products Corporation, is a Delaware corporation which has its principal place of business at Five Giralda Farms, Madison, New Jersey 17947. At all times relevant hereto, American Home Products Corporation has been involved in the promotion, marketing, manufacture and distribution of the pharmaceuticals dexfenfluramine and fenfluramine.

11.

Defendant, Interneuron Pharmaceuticals, Inc., is a Delaware corporation which has its principal place of business at 99 Hayden Avenue, Suite 340, Lexington, Massachusetts, 02173. At all times relevant hereto, Interneuron Pharmaceuticals, Inc., has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical dexfenfluramine.

12.

Defendant, Camall Company, is a Michigan corporation which has its principal place of business at P.O. Box 307, Romeo, Michigan, 48065. At all times relevant hereto, Camall Company has been involved in the promotion, marketing, manufacture and distribution of the pharmaceutical phentermine.

## JURISDICTION AND VENUE

13.

This court has jurisdiction since the Plaintiff is a Louisiana resident.

14.

Venue is proper in Calcasieu Parish because the Plaintiff is a resident of and the causes of action occurred in Calcasieu Parish, Louisiana.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

15.

This lawsuit is being filed within one year of Plaintiff discovering her condition and/or causes of action which are the subject of this lawsuit.

## FACTUAL INFORMATION

16.

At all times relevant hereto, the Defendants themselves, or by use of others, did manufacture, create, desire, test, sterilize, package, distribute, supply, market, sell, promote, advertise, prescribe, warn and otherwise distribute the products phentermine, fenfluramine and/or dexfenfluramine.

17.

Fenfluramine and phentermine, when prescribed or ingested together as weight-loss drugs, are popularly known, advertised, promoted and referred to as "Fen-Phen" or "Fen/Phen". These drugs are commonly prescribed in combination with each other, or combined in a single capsule known as "Dexfenfluramine."

18.

Each of these drugs, phentermine, fenfluramine or dexfenfluramine, has been widely advertised, promoted or prescribed by the Defendants as effective weight control drugs; these drugs are chemically related and affect, among other things, brain and serotonin levels.

19.

Wyeth-Ayerst has admitted that dexfenfluramine "is a related chemical compound of fenfluramine."

20.

On information and belief, Defendants were in control of the design, assembly, manufacture, marketing and sales of phentermine, fenfluramine and/or dexfenfluramine.

21.

Defendants made filing(s) with the United States Food and Drug Administration ("FDA") in conjunction with the approval process for phentermine, fenfluramine and/or dexfenfluramine.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

22.

Defendants' strategy has been to aggressively market and sell these products by misleading and misinforming potential users about the products and by failing to protect users from serious dangers which Defendants knew or should have known to result from use of these products.

23.

Defendants widely and successfully marketed phentermine, fenfluramine and/or dexfenfluramine throughout the United States. Defendants undertook an advertising blitz extolling the virtues of phentermine, fenfluramine and/or dexfenfluramine in order to induce widespread use of the product. The marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other health care facilities, and other promotional materials to be provided to potential phentermine, fenfluramine and/or dexfenfluramine users.

24.

The advertising program, as a whole, by affirmative misrepresentations and omissions, falsely and fraudulently sought to create the image and impression that the use of phentermine, fenfluramine or dexfenfluramine, both individually and in combination, was safe for human use, had fewer side effects and adverse reactions than other methods of weight loss, constituted a convenient, safe form of weight loss and would not interfere with daily life.

25.

Defendants purposefully downplayed and understated the health hazards and risks associated with the use of phentermine, fenfluramine and/or dexfenfluramine. Defendants, through promotional literature, deceived potential users of phentermine, fenfluramine and/or dexfenfluramine by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects. Defendants falsely and fraudulently kept relevant information from potential phentermine, fenfluramine and dexfenfluramine users and minimized user concern regarding the safety of the phentermine, fenfluramine and dexfenfluramine.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

26.

In particular, in the materials produced by Defendants, they falsely and fraudulently misrepresented a number of facts regarding phentermine, fenfluramine and/or dexfenfluramine, including the following:

1. The presence of adequate testing of phentermine, fenfluramine and/or dexfenfluramine, and the presence of adequate testing of any combination use of these products.

2. The severity, frequency and discomfort of side effects and adverse health effects caused by phentermine, fenfluramine and/or dexfenfluramine.

27.

The drugs are so pervasively prescribed throughout the United States that, on information and belief, in excess of 18 million prescriptions for phentermine, fenfluramine and/or dexfenfluramine were written in the United States in the past year.

28.

The sale of phentermine, fenfluramine and dexfenfluramine in the United States generates huge profits which are believed to be in the hundreds of millions of dollars.

29.

A burst of promotional activity preceded *The New England Journal of Medicine* lead article of August 26, 1997 reporting the results of the International Primary Pulmonary Hypertension Study ("IPPH Study") entitled "Appetite Suppressants and the Risk of Primary Pulmonary Hypertension". The IPPH Study concluded that derivatives of fenfluramine (fenfluramine and dexfenfluramine) and other anorexic agents increased the risk of primary pulmonary hypertension by a multiple of 30 times.

30.

The manufacturers and distributors of phentermine, fenfluramine and/or dexfenfluramine, including the Defendants, were aware of the results of the IPPH Study by at least November 1995, well in advance of its official publication in *The New England Journal of Medicine* in August 1996. Nevertheless, the Defendants failed to apprise the public that the risk of contracting PPH was many multiples of that previously reported by the Defendant companies in their literature. These

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

Defendants have also failed to warn the public about the special risks of contracting PPH and other problems associated with the use of phentermine, fenfluramine and dexfenfluramine.

31.

The product warnings were both substantively and graphically wholly inadequate to alert consumer patients of the actual PPH risk associated with these drugs which was then known to the pharmaceutical company Defendants.

32.

Even before their knowledge of the IPPH Study results, however, the Defendants knew about the PPH dangers associated with anorexigens from the experience with the subsequent banning of such drugs in various countries in Europe and as a result of substantial controversy over the sale of these products in Tennessee.

33.

Although the FDA has approved phentermine, fenfluramine and dexfenfluramine separately, the FDA has not approved these drugs for combination use. Defendants knew of and encouraged the prevalence of off-label combination use of their drugs, and failed adequately and appropriately to warn consumers that the combination drug regimen was not FDA approved, was especially hazardous, was not recommended, and had not been tested by appropriate clinical trials.

### FIRST CAUSE OF ACTION
### STRICT PRODUCT LIABILITY (FAILURE TO WARN)

34.

Plaintiff incorporates herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

35.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was and continues to be unaccompanied by proper warnings regarding all possible adverse side effects, including, but not limited to, the comparative severity, scope and duration of such adverse effects.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

36.

Defendants failed to perform adequate testing of phentermine, fenfluramine and dexfenfluramine, used individually or in any combination thereof, so as to ascertain serious potential side effects.

37.

Defendants also failed to effectively warn users that numerous other methods of weight loss, including non-drug methods of weight loss, such as diet control and exercise, should be first line or exclusive methods of weight loss, particularly for non-clinically obese individuals and for high risk individuals.

38.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by these Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from phentermine, fenfluramine, dexfenfluramine or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to aggressively promote the product.

39.

As a producing cause of legal result of the defective condition of phentermine, fenfluramine and/or dexfenfluramine as manufactured or supplied by the Defendants, and as a direct and legal result of the negligence, carelessness, or other wrongdoing and action(s) of these Defendants described herein:

1. Plaintiff, PAM A. VERON, has been injured in health, strength and activity and suffered injuries to body and mind, the exact nature and extent of which will be determined;

2. Plaintiff, PAM A. VERON, has sustained economic loss, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and

3. Plaintiff, PAM A. VERON, has required reasonable and necessary health care, attention and services and has incurred medical, health, incidental and related expenses. Plaintiff is informed and believes and therefore alleges that

LeBLANC, MAPLES & WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

Plaintiff may in the future be required to obtain medical or hospital care, attention and services in an amount as yet ascertained.

40.

At all times relevant hereto, Defendants actually knew of the defective nature of their products as herein set forth and continued to design, manufacture, market and sell their products so as to maximize sales and profits at the expense of public health and safety. Defendants' conduct exhibits such an entire want of care to establish that their actions were a result of fraud, evil motive, actual malice and the conscious and deliberate disregard of foreseeable harm to the Plaintiff. The Plaintiff, therefore, is entitled to punitive damages.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY

41.

Plaintiff incorporates herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

42.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was placed into the stream of commerce by these Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

43.

Alternatively, the phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was defective in design or formulation, in that, when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of weight loss.

44.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was defective due to inadequate warning or instruction because the manufacturers knew

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

or should have known that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

45.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was defective due to inadequate warning or inadequate testing.

46.

The phentermine, fenfluramine and/or dexfenfluramine manufactured or supplied by the Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from phentermine, fenfluramine, dexfenfluramine or combination use of these drugs, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

47.

As a producing cause and legal result of the defective and unreasonably dangerous condition of phentermine, fenfluramine and/or dexfenfluramine as manufactured or supplied by the Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein:

1. Plaintiff, PAM A. VERON, has been injured in health, strength and activity and suffered injuries to body and mind, the exact nature and extent of which will be determined;

2. Plaintiff, PAM A. VERON, has sustained economic loss, including loss of earnings and diminution or loss of earning capacity, in an amount to be determined; and

3. Plaintiff, PAM A. VERON, has required reasonable and necessary health care, attention and services and has incurred medical, health, incidental and related expenses. Plaintiff is informed and believes and therefore alleges that Plaintiff may in the future be required to obtain medical or hospital care, attention and services in an amount as yet unascertained.

48.

At all times relevant hereto, the Defendants actually knew of the defective nature of their products as herein set forth and continued to design, manufacture, market and sell their products so as to maximize sales and profits at the expense of public health and safety. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, evil motive, actual malice and the conscious and deliberate disregard of foreseeable harm to the Plaintiff. The plaintiff, therefore, is entitled to punitive damages.

### THIRD CAUSE OF ACTION

### NEGLIGENCE

49.

Plaintiff incorporates herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

50.

Defendants have a duty to exercise reasonable care in the manufacture, sale, distribution or prescription of phentermine, fenfluramine and/or dexfenfluramine into the stream of commerce, including a duty to assure that the product does not cause users to suffer from unreasonable, dangerous side effects. These Defendants have failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, prescription or distribution of phentermine, fenfluramine and/or dexfenfluramine into interstate commerce in that these Defendants knew or should have known that these products created a high risk of unreasonable, dangerous side effects, some of which, e.g., advanced valvular heart defects, can only be alleviated by open heart surgery or other invasive procedures and some of which, e.g., primary pulmonary hypertension, can be fatal.

51.

The Defendants were negligent in the design, manufacture, testing, advertising, warning marketing, distribution, prescription and sale of phentermine, fenfluramine, and/or dexfenfluramine, in that they:

1. Failed to use due care in designing and manufacturing phentermine, fenfluramine and/or dexfenfluramine so as to avoid the aforementioned risks to Plaintiff when phentermine, fenfluramine and/or dexfenfluramine were being used for weight loss;

2. Failed to accompany their product with proper warnings regarding all possible adverse side effects associated with the use of phentermine, fenfluramine and/or dexfenfluramine and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

3. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of phentermine, fenfluramine and/or dexfenfluramine;

4. Failed to warn Plaintiff prior to actively encouraging the sale of phentermine, fenfluramine, dexfenfluramine and/or any combination of these drugs, either directly or indirectly, orally or in writing, about the following: (1) the need

LeBLANC, MAPLES & WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal pulmonary and cardiac side effects; (2) the possibility of becoming disabled as a result of the drug use or having to undergo heart surgery in order to correct resultant valvular heart defects; (3) that such surgery may leave an unsightly scar or scars; or (4) that heart procedures, heart defects or primary pulmonary hypertension may become protracted, debilitating, difficult and painful, necessitating lengthy surgery or several visits to the doctor, clinic or hospital;

5. Failed to adequately test or warn about the reaction or interaction of one or more of the component parts in phentermine, fenfluramine and/or dexfenfluramine, including, without limitation, the possible adverse side effects caused by the reaction or interaction between the drugs as a result of combination use;

6. Failed to warn that brain serotonin levels are affected by the drug use which can cause other serious health risks or neurotoxicity;

7. Failed to warn that the costs associated with phentermine, fenfluramine and/or dexfenfluramine could exceed other comparable forms of weight loss, particularly for those who were not clinically obese; and

8. In such other and further particulars as will be proven at trial.

52.

Despite the fact that Defendants knew or should have known that phentermine, fenfluramine, dexfenfluramine or any combination thereof caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, these Defendants continued to market, distribute and prescribe phentermine, fenfluramine, dexfenfluramine or combination use thereof to consumers, including Plaintiff, when there were safer alternative methods of weight loss.

53.

The Defendants knew or should have known that consumers such as the Plaintiff would suffer foreseeable injury as a result of Defendants' failure to exercise ordinary care as described above.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

54.

The Defendants' negligence was a proximate cause of the injuries, harm and economic loss which the Plaintiff has suffered and will continue to suffer as previously described.

55.

At all times relevant hereto, the Defendants actually knew of the defective nature of the products as herein set forth and continued to design, manufacture, market, distribute, prescribe and sell the products so as to maximize sales and profits at the expense of the public health and safety. Defendants' conduct exhibits a wanton or reckless disregard for human life and such an entire want of care as to establish that their actions were a result of fraud, evil motive, actual malice and the conscious and deliberate disregard of foreseeable harm to the Plaintiff. The Plaintiff, therefore, is entitled to punitive damages.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

56.

Plaintiff incorporates herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

57.

Defendants expressly warranted that phentermine, fenfluramine and/or dexfenfluramine were safe.

58.

Phentermine, fenfluramine and/or dexfenfluramine do not conform to these express representations because phentermine, fenfluramine and/or dexfenfluramine are not safe and have serious life threatening side effects.

59.

As a direct and proximate result of the breach of said warranties, Plaintiff suffered and will continue to suffer injury, harm and economic loss as alleged herein.

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

## FIFTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

60.

Plaintiff incorporates herein by reference the relevant and consistent allegations of the preceding paragraphs as if included herein.

61.

At the time Defendants marketed, sold and distributed phentermine, fenfluramine and/or dexfenfluramine, they intended, implied and warranted the products to be of merchantable quality and safe and fit for such use.

62.

Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether phentermine, fenfluramine, dexfenfluramine and/or combination use thereof was of merchantable quality and safe and fit for their intended use.

63.

Contrary to such implied warranty, phentermine, fenfluramine, dexfenfluramine and combinations thereof were not of merchantable quality or safe or fit for their intended use, because the products were and are unreasonably dangerous and unfit for the ordinary purposes for which they were used as described above.

64.

As a direct and proximate result of the breach of implied warranty, Plaintiff suffered and will continue to suffer injury, harm and economic loss as alleged herein.

WHEREFORE, Plaintiff prays for relief as follows:

1. Full refund of all costs for PAM A. VERON'S use of the drugs phentermine, fenfluramine and/or dexfenfluramine;
2. Compensatory, consequential damages and punitive damages in excess of the jurisdictional amount for PAM A. VERON;
3. Medical monitoring and future medical expenses for PAM A. VERON;
4. Attorney fees, expenses, interest and costs of this action;

LeBLANC, MAPLES & WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\FEN-PHEN\CLIENTS\VERON\PETITION

5. For such other extraordinary, declaratory or injunctive relief as permitted by law as is necessary to assure that the Plaintiff has an effective remedy; and

6. For such further relief as this Court deems necessary, just and proper.

Respectfully Submitted:

LeBLANC, MAPLES & WADDELL, LLC
Cameron R. Waddell (LA Bar No. 24245)
Jody E. Anderman (LA Bar No. 18764)
5353 Essen Lane, Suite 420
Baton Rouge, Louisiana 70809
Telephone: (225) 768-7222
Facsimile: (225) 768-7999

By: _____
Jody E. Anderman

**PLEASE HOLD SERVICE ON ALL DEFENDANTS**

LeBLANC, MAPLES &
WADDELL, LLC
5353 Essen Lane
The Essen Centre
Suite 420
Baton Rouge, Louisiana
70809
(504) 768-7222

P:\PEN-PHEN\CLIENTS\VERON\PETITION

# MARGOLIS EDELSTEIN
## ATTORNEYS AT LAW

**NEW JERSEY OFFICE**
P.O. BOX 2222
216 HADDON AVENUE
WESTMONT, NJ 08108-2886
609-858-7200
FAX 609-858-1017

**PITTSBURGH OFFICE**
1500 GRANT BUILDING
PITTSBURGH, PA 15219-2203
412-281-4256
FAX 412-642-2380

**DELAWARE COUNTY OFFICE**
216 SOUTH ORANGE STREET
MEDIA, PA 19063
610-565-0311
FAX 610-565-8318

THE CURTIS CENTER
FOURTH FLOOR
INDEPENDENCE SQUARE WEST
PHILADELPHIA, PA 19106-3304

215-922-1100
FAX 215-922-1772

GARY B. CUTLER
DIRECT DIAL: 215-931-5826

OUR FILE NO.:
25250-420

January 5, 1999

**VIA HAND DELIVERY**

Honorable Louis C. Bechtle
17613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

    Re:   **MDL Docket No. 1203**
            **In re Diet Drugs**

Dear Judge Bechtle:

    This is to notify the Court that defendant, Camall Company, filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the Eastern District of Michigan, Southern Division, on January 4, 1999. A copy of the front page of that Petition is enclosed.

    This filing imposes an automatic and immediate stay of proceedings on the commencement or continuation of any legal action against Camall Company.

    Accordingly, Camall Company will expect that all cases in which Camall is a defendant and/or third-party defendant will now, and pending further Order of This Court, be stayed and no proceedings of any type, be it pleadings or discovery, will take place.

    I regret having to provide you with notice of this stay of proceedings.

                                   Respectfully,

                                   GARY B. CUTLER

GBC:mdm
encl.
cc, via fax transmission:
    Elias T. Majoros, Esq.          Jim Daoust, Esq.
    Arnold Levin, Esq.              Mr. Gene Schmall
    Edward W. Madeira, Jr., Esq.    Michael T. Scott, Esq.
    All local counsel for Camall Company    Charles Cheatham, Esq.

**EXHIBIT C**

m:\mdlr\25250\0420\gbc\bechtle.J05

(Official Form 1) (9/97)

**99-40033**

| FORM B1 | United States Bankruptcy Court<br>Eastern District of Michigan | Voluntary Petition |

| Name of Debtor (if individual, enter Last, First, Middle):<br>Carrall Company | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>38-1882104 | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>70945 Van Dyke<br>Romeo, MI 48065 | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business: Macomb | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>P.O. Box 307<br>Romeo 48065 | Mailing Address of Joint Debtor (if different from street address): |

Location of Principal Assets of Business Debtor
(if different from street address above):

### Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)
- ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| Type of Debtor (Check all boxes that apply) | | Chapter or Section of Bankruptcy Code Under Which the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual(s) | ☐ Railroad | ☐ Chapter 7   ■ Chapter 11   ☐ Chapter 13 |
| ■ Corporation | ☐ Stockbroker | ☐ Chapter 9   ☐ Chapter 12 |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding |
| ☐ Other _____ | | |

| Nature of Debts (Check one box) | Filing Fee (Check one box) |
|---|---|
| ☐ Consumer/Non-Business    ■ Business | ■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3. |

**Chapter 11 Small Business** (Check all boxes that apply)
- ☐ Debtor is a small business as defined in 11 U.S.C. § 101
- ☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

**Statistical/Administrative Information** (Estimates only)
- ■ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ■ | ☐ |

| Estimated Assets | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

THIS SPACE IS FOR COURT USE ONLY

FILED (!)
1999 JAN -4 P 2:25
U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

CASE ASSIGNED
TO JUDGE GRAVES